[No. 10480. *En Banc.* December 23, 1912.]

JAMES T. WENTWORTH, *Respondent*, v. JOHN R. MOORE
et al., *Appellants.*[1]

CORPORATIONS—FRAUDULENT SALE OF STOCK—LIABILITY OF AGENT —FRAUD. Where an agent, selling stock on a commission, induced plaintiff to purchase the stock by representations which he knew to be false respecting the personnel of the stockholders and the financial strength of the company, and which were relied on, he is liable to the purchaser in an action for damages for deceit.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered February 3, 1912, upon findings in favor of the plaintiff, in an action for damages from fraud in a sale of stock, after a trial to the court. Affirmed.

*Reynolds, Ballinger & Hutson,* for appellants.

*G. D. Emery* and *Gates & Emery,* for respondent.

[1]Reported in 128 Pac. 634.

CROW, J.—The Alaska-Yukon-Pacific Exposition was held in the city of Seattle during the year 1909. Some time prior thereto, a corporation, known as Electric Transportation Company, having its principal office in the city of Seattle, was organized with a capital stock of $50,000, under the laws of this state, for the purpose of purchasing and constructing electric launches and automobiles to carry freight and passengers from the city to the exposition. This company offered its capital stock for sale, and employed the defendant John R. Moore to make sales. Numerous sales were made by him to investors, one of whom was the plaintiff, James T. Wentworth, who purchased twenty-five shares at par for $2,500. This action was commenced by Wentworth against John R. Moore individually, John R. Moore as guardian of Lillian C. Moore, and Lillian C. Moore, to recover damages resulting from the sale. Plaintiff alleged fraud, charging that Moore made representations as to the financial strength of the company and the personnel of the stockholders which he knew to be false, and upon which plaintiff relied. Plaintiff previously sued the transportation company, and had recovered from its receiver a portion of the money which he had paid for the stock. Prior to the commencement of that action, the defendant Moore had represented to plaintiff and had caused him to believe that he (Moore) was a nonresident of this state, and for that reason he was not joined as defendant in the first action. Plaintiff alleged that Moore immediately invested the money he received from plaintiff for the stock in Seattle real estate, which was conveyed to Moore's minor daughter Lillian C. Moore; that Moore afterwards caused himself to be appointed as her guardian, and that the plaintiff was entitled to have a lien decreed in his favor upon the real estate thus purchased. The trial court entered judgment in plaintiff's favor for $1,170, and costs, decreed the same to be a lien upon the real estate conveyed to Lillian C. Moore, and ordered the real estate sold. The defendants have appealed.

The appellant John R. Moore, when acting as agent for the Electric Transportation Company in making the sale to respondent, was to receive, and did receive, an exorbitant commission.  The sale was made on March 15, 1909.  Respondent claims, the trial court found, and the evidence shows, that Moore represented to respondent that one Charles H. Lilly, a prominent business man of Seattle, held $2,000 of the stock; that one Mrs. E. S. Price held $2,000 of the stock; that one C. J. Zintheo held $7,000 of the stock; that one J. A. Lane held $5,000 of the stock; that John R. Moore himself held $2,000, and that all of their subscriptions have been fully paid in cash.  He further represented that all the capital stock had been subscribed but $15,000.  These representations were made orally and in writing.  Appellant further stated, that the company was in good financial condition; that it had contracted for eight electric and two gasoline trucks of forty passengers capacity; that it had paid $10,000 in cash on the contract; that it had on deposit $5,000 in cash to apply on such purchase; that the remainder of the purchase price was to be paid in monthly installments out of the receipts from the automobiles; that the automobiles were then in transit, and that they would be delivered on or before April 15, 1909.  The evidence shows that each and all of these representations were false, that they were believed and relied upon by the respondent, and that Moore personally knew many of them to be false.

Appellant Moore contends, that he was acting only as agent for the transportation company in selling the stock; that the facts upon which he based his representations had been communicated to him by the transportation company; that respondent did not segregate the various representations upon which he relied, some having been made to him by one Zintheo, general manager of the corporation, and others by appellant Moore; that appellant had no reason to doubt the truth of the representations made by him; that he only represented the facts as given to him by his employer; and

that respondent, before making his purchase, had ample opportunity to investigate the corporation and its solvency.

The position of the appellant Moore, as disclosed by these contentions, seems to be that, at the time of making the sale, he did not know his statements were false; that in making them he properly relied upon previous information communicated to him by his employer; and that having himself acted in good faith, he cannot be held liable in this action. The evidence convinces us that he did know that a very considerable portion of his statements and representations were false, and that he should have known others were false. As an illustration, it may be remarked that, when he represented Mr. Lilly to be a stockholder, he had personal knowledge of the fact that, although Mr. Lilly previously subscribed and gave his notes for stock, he, within a few days thereafter, rescinded his contract of subscription, surrendered his stock, and demanded a return of his notes; and that the transportation company surrendered a portion of his notes, and agreed to protect him against others which it had sold to an innocent purchaser. Appellant Moore knew of this previous rescission by Lilly and the return of his notes when he represented to respondent that Lilly was still a stockholder. Other instances of his personal knowledge of the falsity of his representations might be cited. The evidence further shows that, as soon as he received a payment on the stock from respondent, he invested it in the Seattle lots, taking title in the name of his seven-year old daughter; that for some time thereafter he remained in the state of Oregon, informing and persuading respondent that he was a nonresident of this state, and that he did so for the evident purpose of escaping an action for fraud and damages in the courts of this state. The record also shows that other investors in the stock of this company had been defrauded by appellant. Upon the facts proven, we fail to see how he can escape liability.

Appellant insists that respondent relied only upon a written statement prepared and delivered to him by Zintheo. This

contention is not sustained by the evidence. It appears that a written but false statement relative to the financial condition of the transportation company, prepared for the purpose of showing its solvency, was delivered to respondent by either Zintheo or appellant at a time when both were present. Wentworth testified that the document was handed to him in compliance with his request for a statement, as he had been told by Moore that the books were not posted and could not be inspected. Appellant testified that it was given to respondent by either himself or Zintheo, while Zintheo denied giving it to respondent. Whatever the facts may be as to its delivery to respondent, appellant was party to the transaction, knew the statement was false in many particulars, received the benefit of a large commission from the corporation on the sale of the stock, and is now in no position to claim immunity. The controlling issue in this case is whether respondent was defrauded by appellant, and whether appellant knowingly made false representations upon which respondent relied. The evidence upon this issue was properly resolved in the respondent's favor.

The judgment is affirmed.

MOUNT, C. J., PARKER, ELLIS, MORRIS, FULLERTON, CHADWICK, and GOSE, JJ., concur.